### In re LEHAL REALTY ASSOCIATES, Debtor.

**Bankruptcy No. 89 B 20078.**

United States Bankruptcy Court, S.D. New York.

April 2, 1990.

See also, Bkrtcy., 112 B.R. 588.

John F. Scheffel, operating trustee, Bigham Englar Jones & Houston, New York City.

Bigham Englar Jones & Houston, New York City, for operating trustee.

Marvin Neiman, P.C., New York City, for Israel Halpern.

## DECISION ON APPLICATIONS FOR INTERIM ALLOWANCES

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 11 trustee and his attorneys have applied for interim allowances of compensation for their services in this involuntary Chapter 11 case.

On February 9, 1989, an involuntary petition for relief under Chapter 11 of the United States Bankruptcy Code was filed by one of the general partners of the debtor, Lehal Realty Associates. The debtor is a New York partnership which holds title to a former golf course in Rockland County, New York. The Chapter 11 case was commenced in order to prevent a foreclosure sale scheduled by a mortgagee bank which had obtained a foreclosure judgment against the property while the petitioning partner feuded with other interested individuals as to who were the genuine partners of the debtor and who held title to the golf course. The factual background of the skirmishing between the various interests which immediately preceded the filing of the debtor's Chapter 11 petition is more fully described in this court's decision which sustained the filing of the involuntary Chapter 11 petition. *In re Lehal Realty Associates*, 101 B.R. 418 (Bankr.S.D.N.Y.1989).

The nonpetitioning partner and the mortgagee bank joined in a motion for the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104 in order to effectuate a sale of the golf course, unencumbered by the feuding between the partners as to control. The motion was granted and a Chapter 11 trustee was selected by the United States trustee, effective August 7, 1989.

This is a single asset case, with no business operations, no employees and no personal property or equipment other than the golf course, which was purchased by a Japanese controlled company, known as Three Little Willows, for $7.6 million. The main claimants to the proceeds from the sale are the two general partners and the several mortgagees holding secured claims against the real estate.

Bigham, Engler, Jones & Houston, attorneys for the Chapter 11 trustee, John F. Scheffel, have applied for an interim fee application for their legal services in the sum of $56,881.50, plus out of pocket expenses of $5,860.33 for 353.80 hours of billable time. Included in this time are 103.50 billable hours charged at the rate of $225 to $275 per hour by the Chapter 11 trustee, John F. Scheffel, in his capacity as a partner in this firm.

When a trustee in a bankruptcy case selects his or her own firm, or is employed by the law firm, and performs legal services as well as trustee duties, there is always a difficult line to be drawn between the necessary legal services and the ministerial duties of the trustee. *In re Meade Land and Development Co., Inc.*, 527 F.2d 280,

288 (3rd Cir.1975); *In re Orbit Liquor Store*, 439 F.2d 1351 (5th Cir.1971); *In re Santoro Excavating, Inc.*, 56 B.R. 546 (Bankr.S.D.N.Y.1986); *In re Minton Group, Inc.*, 33 B.R. 38, 40 (Bankr.S.D.N.Y.1983). No matter how scrupulously the trustee specifies those services for which compensation is claimed as necessary legal services, there is a certain amount of blurring of the tasks performed which the court must review very carefully. A circumspect evaluation by the court is essential because the interested parties may tend to magnify the importance of purely ministerial functions which should be performed by a trustee and which the trustee's firm believes requires the professional expertise of the firm, as distinguished from the administrative duties of a trustee.

There were certain services which were included in the application for counsel fees which one of the debtor's general partners found objectionable, including billable time for telephone calls to potential purchasers of the golf course, placing advertisements for the sale of the property, reviewing purchase offers, and attending the § 341 meeting of creditors.

In reviewing the billable hours, it appears that there were 32.40 hours which were performed by the trustee and claimed as legal services which should have been performed in the trustee's fiduciary capacity in responding and making telephone calls with respect to administrative tasks for which the Chapter 11 trustee was appointed to perform. These billable hours, at $225 per hour, involving a claim of $7,290.00, should be subtracted from the claim for legal fees.

■ Additionally, there were certain other ministerial duties which were performed by another attorney in the trustee's firm, which were billed at the rate of $140 per hour, which were more in the nature of administrative tasks that a trustee would be expected to perform. These functions totalled 24.2 billable hours. Furthermore, this attorney performed over 31.5 billable hours in working on a motion for the trustee to intervene in the dispute between the general partners and the mortgagee bank's application for leave to foreclose on the golf course. This intervention by the Chapter 11 trustee was not only apparent as a matter of right without any need for research, but was consented to by the parties. The estate should not pay for unnecessary legal shadow boxing. Allowing for one hour to prepare a motion to intervene, which is more than ample time to dictate a notice of motion, supporting affidavit and order, or an order on stipulation, there remains 30.5 superfluous billable hours for the intervention preparation. Hence there must be deducted from the application a total of 54.7 billable hours (24.2 plus 30.5) at $140 per hour, amounting to $7,658.00.

A third attorney in this firm performed some ministerial services which were more appropriately performable by the trustee, which totalled one hour at $165.00 per hour.

Upon deducting $7,290.00, $7,658.00 and $165.00, the balance of the application for legal services amounts to the sum of $41,768.50, which this court will allow as an interim compensation, subject to a 25% hold-back, or a net allowance of $31,326.37, which is found to be a fair and reasonable interim award, together with reimbursement for reasonably incurred expenses of $5,860.33.

John F. Scheffel, the Chapter 11 trustee has applied for an interim statutory commission of $83,420.10, based upon the maximum allowable percentages under 11 U.S.C. § 326(a). This figure is computed on the basis of total disbursements of $2,780,670.00.

■ Although the trustee did execute the sales contract involving the sale of the golf course for over $7 million, the debtor had already engaged in extensive negotiations with Japanese interests for the sale of the golf course before the trustee was appointed. That the golf course, which was purchased by the partners of the debtor for approximately $1.2 million, was flipped over in a short time to Three Little Willows, a Japanese controlled entity, for over $7 million does not mean that the trustee's compensable services should be geared to the amount of funds distributed.

The statutory fee allowable under 11 U.S.C. § 326 sets "the outermost limit on compensation Trustees can receive under the Code." *In re Rauch*, 110 B.R. 467, 473, 20 B.C.D. 46, 50 (Bankr.E.D.Cal.1990) (A land sale of $710,000 resulted in a fee of $7,500.00, as contrasted with a statutory maximum application of $21,502.50). In the instant case, the trustee would have been required to perform the same services if the property had sold for $710,000.00 rather than over $7 million. There was no business to conduct, no inventory to maintain and no operations to continue. It was simply a matter of selling the property to the highest bidder at the auction sale conducted by the trustee, paying the taxes, satisfying the mortgages and distributing the proceeds to the partners in accordance with their proportionate shares. There will be documents for the trustee's attorneys to prepare and there will be legal issues which the trustee's counsel may confront with regard to distributions and future proceedings. However, the operating Chapter 11 trustee has nothing to operate, although there will be additional duties for the trustee to perform which will be reflected in a final award of compensation. This is not a probate estate where the trustee's commissions are determined solely by the amount of the funds received and disbursed.

The trustee performed his services in a most professional manner and contributed to an orderly sale of the vacant property which was formerly operated as a golf course. A unified approach to potential purchasers was required whereas the bickering partners could not even agree as to who was a partner of the debtor and to what extent. A responsible trustee was necessary to conduct the sale, execute the documents of sale and distribute the proceeds. For these services, and in light of the facts and circumstances in this case, it is concluded that a $21,000.00 fee is fair and reasonable interim compensation for the services performed by the trustee for the period covered by his application.

Accordingly, subject to a 25% hold-back, the trustee is awarded an interim net fee of $15,750.00.

SETTLE ORDER in accordance with the foregoing findings and determinations.