**In re Hala L. PILON, Debtor.**

No.  00–22064.

United States Bankruptcy Court,
D. Connecticut.

Oct. 21, 2003.

---

Randall S. McHugh, Reiner, Reiner & Bendett, P.C., Farmington, CT, Counsel for Debtor.

John J. O'Neil, Jr., Francis, O'Neil & Del Piano, LLC, Hartford, CT, Counsel for Chapter 7 Trustee.

Steven E. Mackey, Patricia Beary, Office of the United States Trustee, New Haven, CT, Counsel for Carolyn S. Schwartz, United States Trustee, Region 2.

## RULING ON DEBTOR'S OBJECTION TO TRUSTEE'S APPLICATION FOR COMPENSATION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

### ISSUE

This proceeding requires determining the reasonable compensation for a Chapter 7 trustee. John J. O'Neil, Jr., Esq. ("O'Neil"), the Chapter 7 trustee of the estate of Hala L. Pilon ("the debtor"), on July 24, 2003, filed an application for final compensation of $33,702.36, together with his trustee's final report. The Office of the United States Trustee ("the UST") supported the application. The debtor objected (this being a solvent estate) contending that the requested compensation is unreasonable and excessive. After a short hearing on the application, each party, including the UST, submitted a supporting brief.

### II.

### BACKGROUND

The debtor, on July 26, 2000, originally filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. Her estate consisted primarily of an island, located off Cape Cod, in the town of Wareham, Massachusetts, inherited from her family. The debtor, in her schedules, valued the island at $2,450,000; disclosed as additional assets four contingent and unliquidated claims; listed recorded encumbrances, including $130,742.68 in unpaid property taxes, all totaling $355,134 on the island; and enumerated unsecured claims amounting to $35,600.

The court, on December 6, 2000, approved the debtor's application to employ Kinlin Grover GMAC Real Estate ("Kinlin"), a real estate brokerage firm specializing in waterfront properties in the Cape Cod area, to market the island for $2,800,000. The court, on the motion of a secured creditor, on April 17, 2001, converted the debtor's case to one under Chapter 7 for, *inter alia*, unreasonable delay by the debtor that was prejudicial to creditors, and O'Neil became trustee. O'Neil continued Kinlin's retention and Kinlin, in August, 2001, obtained a purchase offer for $625,000. Although the debtor and some unsecured creditors objected, the court, on April 10, 2002, granted O'Neil's motion to sell the island for $625,000. O'Neil requested the appointment of his law firm, Francis, O'Neil & Del Piano, LLC ("FO'N & D") to represent him in the sale of the island, which request the court granted. The sale concluded on May 10, 2002, and the court subsequently awarded FO'N & D fees in the amount of

$10,968.50. FO'N & D's fee application included 28.5 hours of services by O'Neil, as a senior member of the law firm, at the hourly rate of $250.[1]

The debtor, through court-approved special counsel, settled one of her contingent and unliquidated claims for $24,000. O'Neil abandoned the debtor's remaining claims because the proceeds from the sale of the island were more than sufficient to satisfy all creditor and administrative claims, and a surplus of $26,522 was being returned to the debtor. O'Neil's fee application asserts he spent 82.3 hours administering the debtor's estate, and seeks compensation computed as a statutory percentage of funds turned over to creditors. *See* Bankruptcy Code § 326(a) *infra.*

### III.

### DISCUSSION

#### A.

The Bankruptcy Code deals with compensation of Chapter 7 trustees in two sections. Section 330, in relevant part, provides:

(a)(1) ... the court may award to a trustee ...

(A) reasonable compensation for actual, necessary services rendered by the trustee ....

...

(3) ... In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Section 326, entitled *Limitation on compensation of trustee*, states, in relevant part:

(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

The legislative history to § 326 discusses the interaction of the "reasonable compensation" standard of § 330 and the maximum compensation imposed under § 326:

This section [§ 326] is derived in part from section 48c of the [former Bankruptcy Act]. It must be emphasized that this section [§ 326] does not authorize

---

**1.** A law firm associate also billed 17.8 hours at $220 per hour.

compensation of trustees. This section simply fixes the maximum compensation of a trustee. Proposed 11 U.S.C. § 330 authorizes and fixes the standard of compensation. Under section 48c of [the former] law, the maximum limits have tended to become minimums in many cases. This section [§ 326] is not intended to be so interpreted. The limits in this section, together with the limitations found in section 330, are to be applied as outer limits and not as grants or entitlements to the maximum fees specified.

H.R.Rep. No. 95–595 at 327 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6283; S.Rep. No. 95–989 at 37 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5823.

■ In applying §§ 330 and 326, it is now well settled that:

[Section] 326 sets the maximum compensation payable to the trustee; it does not establish a presumptive or minimum compensation. The computation in § 326(a) is a limitation on compensation, not a mandate for minimum commissions .... The cap of § 326(a) is implicated only when the compensation is reasonable, and reasonableness is a determination that must begin with 11 U.S.C. § 330. *In re Butts,* 281 B.R. 176, 178 (Bankr.W.D.N.Y.2002). Accordingly, a court awarding trustee fees must begin by assessing reasonableness under § 330(a) before applying the percentage-based cap under § 326(a).

*Connolly v. Harris Trust Co. of California (In re Miniscribe Corp.),* 309 F.3d 1234, 1241 (10th Cir.2002); *see also Staiano v. Cain (In re Lan Assoc. XI, L.P.),* 192 F.3d 109, 122 (3d Cir.1999) ("[T]he reasonableness determination under § 330(a) should not include consideration of the caps set forth in § 326(a).").

### B.

■ At the outset, the court notes that O'Neil has performed his duties in a timely, efficient and professional manner and that the necessity for and the reasonableness of the time spent on the services provided is unquestioned. The sole issue before the court is whether the statutory maximum requested exceeds the reasonable compensation, as defined in § 330(a), for such services. "In employing the fee setting criteria of Section 330(a), the bankruptcy judge is accorded wide discretion." *In re Lan Associates XI, L.P.,* 192 F.3d 109, 122 (3rd Cir.1999).

■ This case, having commenced under Chapter 11, was administered preconversion by the debtor. Being a single asset, solvent estate, its administration, both before and after conversion, was essentially concerned with marketing the island. O'Neil, as well as the debtor, made significant contributions toward the eventual sale of the island. O'Neil's duties did not extend over one year, and his requested compensation is equivalent to an hourly rate of $409.50.

■ In reviewing attorney's fee applications under § 330(a), the court ordinarily employs a lodestar analysis, multiplying the necessary hours worked by a reasonable hourly rate. Accordingly, a lodestar analysis provides the starting point for determination of O'Neil's reasonable compensation. The court concludes that the rates charged for the nature, extent and value of trustee services rendered in the case would not exceed $250 per hour, O'Neil's standard hourly rate. "While a trustee's standard rate per hour as an attorney is not necessarily the measure that should be applied in all cases to determine the value of a trustee's services as a trustee, it is one fact which indicates what the time of a trustee may be worth when he is employed upon tasks which would

require commensurate skill with that which he would be required to employ as an attorney." *In re Biskup*, 236 B.R. 332, 337 (Bankr.W.D.Pa.1999).

■ "The trustee bears the burden of proof in all matters concerning his fees." *In re Stoecker*, 118 B.R. 596, 601 (Bankr. N.D.Ill.1990). In the absence of any evidence that O'Neil's skill and experience as a trustee is more valuable than his skill and experience as an attorney, the court adopts his standard billing rate as an attorney as reasonable for his duties as a trustee.[2] O'Neil's records indicate that he has spent 82.3 hours administering the estate. At his attorney billing rate of $250 per hour, the reasonable compensation for such services is $20,575.

■ O'Neil argues that the court should enhance the lodestar calculation, based upon the twelve-factor analysis ("the Johnson factors") employed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)[3] to determine the reasonableness of an attorney's fee application in a civil rights action. The Supreme Court has held that "the lodestar figure includes most, if not all, of the relevant [Johnson] factors constituting a 'reasonable' attorney's fee." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); *see also Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). O'Neil submits that the compensation sought is justified in light of "the applicable *Johnson* factors in this matter [which] are the time and labor required, the amount involved and the result obtained." (O'Neil's Response at 5.) This court, in *In re Kero–Sun*, 59 B.R. 630 (Bankr.D.Conn.1986) (citing the Supreme Court's decisions in *Blum* and *Hensley* ), discussed and excluded these considerations as justifying an upward adjustment to the lodestar calculation.[4]

2. The UST concedes, in her memorandum, that "the chapter 7 trustee has the burden of establishing the reasonableness of his request for compensation [and that i]f the trustee cannot ... augment the description of the services he provided so that the reasonableness of his request is established for the Court, the application, as presented, must fail." (UST's Mem. at 7.) The UST, after noting that O'Neil's application is "on the high side of the range of reasonableness," requests that "[s]hould the Court determine that [O'Neil] has not provided enough detail concerning the services provided, the U.S. Trustee would support [O'Neil] having an additional opportunity to augment his application, and that his application be denied without prejudice to his augmenting his application." (*Id.*) The court's determination that O'Neil has not met his burden of proof of entitlement to an hourly rate that exceeds his billing rate as an attorney is not based on a lack of detail regarding his services to the estate, but on a lack of evidence that the prevailing market rates for such services in nonbankruptcy matters would support his fee application.

3. The twelve *Johnson* factors are: (1)the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent;(7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–719.

4. In *Delaware Valley*, the Supreme Court deferred consideration of whether the risk of nonpayment where a fee is on a contingency basis would justify enhancement of a lodestar calculation. As this court noted in *Kero–Sun*, an appointed professional in an estate with assets does not risk nonpayment.

## IV.

## CONCLUSION

The court concludes that, under the circumstances of this case, an award of trustee's fees equal to the number of hours expended by O'Neil in administering the estate multiplied by his hourly rate as an experienced, competent attorney, is consistent with the "reasonable compensation" requirement of § 330(a). Accordingly, the debtor's objection is sustained and O'Neil's application for compensation is reduced to $20,575 and such sum is approved. It is

SO ORDERED.